UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-173-2 (PJS/DTS)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

GISELA CASTRO MEDINA,
a/k/a Gisela Medina,

        Defendant.

**PLEA AGREEMENT AND
SENTENCING STIPULATIONS**

The United States of America and defendant Gisela Castro Medina (hereinafter referred to as the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter "the United States" or "the government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges.** The defendant agrees to plead guilty to Count One of the Indictment, which charges the defendant with Conspiracy To Commit Sex Trafficking of Minors, in violation of 18 U.S.C. §§ 1591(a)(1), 1591(b)(2), 1591(c), and 1594(c); and Count Ten of the Indictment, which charges the defendant with Sex Trafficking – Obstruction, in violation of 18 U.S.C. § 1591(d). The defendant fully understands the nature and elements of the crimes with which she has been charged. At the time of sentencing, the government agrees to move to dismiss the remaining counts of the Indictment as to the defendant.

SCANNED
DEC 20 2022
U.S. DISTRICT COURT MPLS

1

2. **Factual Basis**. The defendant is pleading guilty because she is in fact guilty of Counts One and Ten of the Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

From in or about May 2020 through in or about December 2020, in the State and District of Minnesota, in and affecting interstate commerce, the defendant knowingly and intentionally conspired and agreed with co-defendant Anton Joseph Lazzaro a/k/a Tony Lazzaro, a/k/a Tony (hereinafter referred to as A.J.L.) to recruit, entice, harbor, transport, provide, obtain, maintain, patronize, and solicit minors, namely Minor Victims A, B, C, D, E, and F, to engage in commercial sex knowing, in reckless disregard of the fact, and/or having had a reasonable opportunity to observe that Minor Victims A, B, C, D, E and F had not attained the age of 18 years.

In May 2020, the defendant and A.J.L. met each other through the Seeking Arrangement website, which is known as a "sugar daddy" website. A.J.L. began communicating with the defendant and Minor Victim A and sent them $50 for food through Venmo. A.J.L. then invited the defendant and Minor Victim A to his condominium at the Hotel Ivy in Minneapolis, Minnesota. Before arriving at the Hotel Ivy, the defendant told A.J.L. that Victim A was only 16 years old. A.J.L. provided the defendant and Minor Victim A with alcohol and told them that he would pay them certain amounts of money depending on whether they took off their clothes and kissed each other. The defendant and Minor Victim A performed sexual acts

with A.J.L. A.J.L. paid them approximately $600 for commercial sex acts with him during the first meeting and also provided them with alcohol. The defendant participated in another commercial sex act with Minor Victim A and A.J.L. They each received money. Thereafter, the defendant no longer participated directly in the commercial sexual activity, however, Minor Victim A was caused to engage in sex in exchange for money with A.J.L. several times after that. On each occasion, A.J.L. paid Minor Victim A money in the form of an envelope of cash. Minor Victim A provided half of the money to the defendant. At one point, the defendant asked if receipt of the money from Minor Victim A's sexual activity with A.J.L. made her a "pimp."

Thereafter, the defendant and A.J.L. continued to communicate with each other via Snapchat, WhatsApp, and Signal. A.J.L. directed the defendant to use WhatsApp and eventually Signal because those applications encrypted their communications. A.J.L. also changed the settings on the defendant's phone so that WhatsApp and Signal would delete text messages between A.J.L. and the defendant multiple times a day.

A.J.L. wanted to have sex with younger girls, to include both young adults and minors, and conspired with the defendant to recruit, entice, harbor, transport, provide, obtain, maintain, patronize, and solicit minor girls to engage in commercial sex acts with A.J.L. The defendant used social media, such as Snapchat and Instagram, and her school, friend, and community networks to identify minor girls for A.J.L. A.J.L. informed the defendant of the "type" of girl he wanted to engage in

3

commercial sex acts with, namely, of a certain skin color, petite body type, and no tattoos. The defendant would show A.J.L. photographs of minor girls and A.J.L. would "approve" or decline. A.J.L. would identify photographs of minor girls and direct that the defendant reach out to them. If A.J.L. was interested in a particular girl, the defendant would provide the girl's contact information to A.J.L. The defendant provided the girls with various information about A.J.L. including that he was an older guy who wanted to be a sugar daddy to younger girls, that he had a lot of money, that he was not "creepy," and that he was interested in the particular girl. During the time of the conspiracy, the defendant put together a list of more than 20 common teen slang words; as a result, A.J.L. was able to better interact with the girls with whom he was causing to engage in commercial sex or attempting to do so.

The defendant agrees that, as a member of the conspiracy, she is responsible for having recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, and/or solicited Minor Victims A, B, C, D, E, and F to engage in commercial sex acts with A.J.L. The defendant agrees that she specifically knew Minor Victims A, B, C, D, and E had not attained the age of 18 years old. The defendant knew the Minor Victims were not 18 years old because she knew them personally and knew their age and where they went to high school, or she had reasonable opportunity to observe that they were under the age of 18 and in many cases, did learn during the course of the conspiracy that the victims were under the age of 18 years. The age of several of the victims was also present in their social media profiles. The defendant and A.J.L. had extensive discussions about the age of

4

Minor Victim C who was 15 years old at the time she was recruited by the defendant and engaged in commercial sex acts with A.J.L. In addition to directly recruiting the victims, the defendant also indirectly recruited them by using friends and intermediaries to recruit minor victims for A.J.L. on the defendant's behalf and at her direction.

The defendant admits and acknowledges that A.J.L. engaged in commercial sex acts with Minor Victims A, B, C, D and E. As part of the conspiracy, the defendant is aware that A.J.L. paid the minor victims money in exchange for sex acts with him. There was a quid pro quo in providing cash and other items of value to the defendant and the minor victims in exchange for sex. The defendant admits and acknowledges that A.J.L. paid the minor victims with cash in exchange for the minor victims to have commercial sex with A.J.L. As part of A.J.L.'s relationship with the minor victims, he also provided them with alcohol, vaping cartridges, food, luxury items (such as smartphones and high-end purses), accommodations in the Hotel Ivy, and transportation. The defendant was compensated with cash and Venmo payments by A.J.L. for identifying, recruiting, and introducing minor girls to A.J.L. for purposes of commercial sex acts with A.J.L. A.J.L. provided the defendant with significant amounts of Adderall, alcohol, cash, and Venmo payments so that she could buy food, pay rent and utilities at an apartment near the University of St. Thomas, pay tuition at the University of St. Thomas, pay for her Mini Cooper, buy electronic devices such as an Apple iPhone and MacBook Pro to replace those seized during the execution of federal search warrants in December 2020, alcohol, vaping cartridges, clothes, shoes,

5

and travel expenses like flights and other accommodations. The defendant knew that the cash was payment for her role in the conspiracy, including for her role as the recruiter of the minor victims for commercial sex. As part of the conspiracy, and in an effort to secure the defendant's silence, A.J.L. also promised the defendant that he would pay for her future graduate school expenses and buy her a house.

The defendant admits that her conduct was in and affecting interstate commerce because, for example, she and A.J.L. used cellular telephones and internet-based social media applications to communicate with each other and with the minor victims, and because A.J.L. would pay her for her role in the conspiracy in manners and means that were in and affecting interstate commerce, such as Venmo payments. In addition, the defendant and A.J.L. carried out the conspiracy by using websites and apps such as Snapchat, Instagram, WhatsApp, Signal, and Uber to transport the minor victims to and from A.J.L.'s penthouse at Hotel Ivy. In addition, A.J.L. paid for minor victims to stay at Hotel Ivy.

The defendant admits and acknowledges that after federal search warrants were executed at her dorm and at A.J.L.'s residence in December 2020, she and A.J.L. talked about the federal investigation on numerous occasions. The defendant and A.J.L. discussed which of the minor victims talked to law enforcement. In or about March 2021, in the State and District of Minnesota, the defendant and A.J.L., aiding and abetting one another, knowingly and intentionally obstructed, and attempted to obstruct, and knowingly and intentionally interfered with and prevented the enforcement of sex trafficking statutes, including Title 18, United States Code,

Section 1591(a). Specifically, the defendant and A.J.L. agreed to try to pay off Minor Victim C to prevent her from talking to law enforcement about having sex with A.J.L. This is because the defendant and A.J.L. knew that Minor Victim C was only 15 years old. The defendant picked up Minor Victim C at her place of employment, drove Minor Victim C around in the defendant's Mini Cooper, and provided her with hundreds of dollars of cash, gift cards, vapes, and alcohol from A.J.L. The defendant also met with Minor Victim C to tell her not to text A.J.L. anymore. The defendant admits that her meetings with Minor Victim C and the items of value that she provided to Minor Victim C were for the purpose of obstructing and preventing Minor Victim C from speaking to law enforcement about engaging in commercial sex acts with A.J.L. The defendant agrees that A.J.L. was aware of these meetings and provided the defendant with the items of value for Minor Victim C.

The defendant knowingly and voluntarily participated in the criminal conspiracy to traffic minor girls for the purpose of having commercial sex with A.J.L., and to obstruct and attempt to obstruct the investigation of this sex trafficking conspiracy by meeting with Minor Victim C and offering her cash, vapes, and alcohol in exchange for not talking to law enforcement. In addition, the defendant admits that she successfully recruited and attempted to recruit additional minor victims to engage in commercial sex acts with A.J.L. and those victims were not named in the Indictment.

3.   **Waiver of Pretrial Motions.** The defendant understands and agrees that the defendant has certain rights to file pre-trial motions in this case. As part of

7

this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file any pre-trial motions in this case.

4. **Waiver of Constitutional Trial Rights.** The defendant understands that she has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that she has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent her. The defendant understands that she has the right to persist in a plea of not guilty and, if she does so, she would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5. **Additional Consequences.** The defendant understands that as a result of her convictions, she could be assessed the costs of prosecution and experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

6. **Statutory Penalties.** The defendant understands that Count One of the Indictment, Conspiracy To Commit Sex Trafficking of Minors in violation of 18 U.S.C. §§ 1591(a)(1), 1591(b)(2), 1591(c), and 1594(c), is a felony offense that carries the following statutory penalties:

    a. no mandatory minimum and a maximum term of life imprisonment;

    b. a supervised release term of at least 5 years up to a maximum supervised release term of life;

    c. a maximum fine of $250,000;

    d. a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A);

    e. a mandatory payment of $5,000 to the Domestic Trafficking Victims' Fund; and

    f. payment of mandatory restitution to the victims of the offense.

The defendant understands that Count Ten of the Indictment, Sex Trafficking – Obstruction, in violation of 18 U.S.C. § 1591(d), is a felony offense that carries the following statutory penalties:

    a. no mandatory minimum and a maximum term of 25 years of imprisonment;

    b. a supervised release term of at least 5 years up to a maximum supervised release term of life;

    c. a maximum fine of $250,000;

    d. a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A);

    e. a mandatory payment of $5,000 to the Domestic Trafficking Victim's Fund; and

    f.  payment of mandatory restitution to the victim of the offense.

7. **Revocation of Supervised Release.** The defendant understands that if she were to violate any supervised release condition while on supervised release, the Court could revoke the defendant's supervised release, and she could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that she be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

8. **Guidelines Calculations.** The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq*. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guidelines calculations:

### Count 1: Conspiracy To Commit Sex Trafficking of a Minor

  a. Base Offense Level. The defendant agrees that there were at least six victims (*i.e.*, Minor Victims A, B, C, D, E, and F) of the sex trafficking conspiracy, and an offense level calculation is required for each minor victim. As to each minor victim, the parties agree that the base offense level is **30**. U.S.S.G. §§ 2G1.3(a)(2) and 2G1.3(d)(1); 2X1.1(a); 1B1.2(d) and1B1.3, cmt n.7.

  b. Specific Offense Characteristics. The government maintains that the defendant unduly influenced the minors to engage in prohibited sexual conduct, which increases the base offense level

10

by **2 levels**. U.S.S.G. § 2G1.3(b)(2)(B). The defendant reserves the right to oppose this enhancement.

The parties agree that the defendant used a computer in the commission of the offense, which increases the base offense level by **2 levels**. U.S.S.G. § 2G1.3(b)(3)(B).

The parties agree that the offense involved a sex act or sexual contact with Minor Victims A, B, C, D, and E, which increases the base offense level by an additional **2 levels**. U.S.S.G. § 2G1.3(b)(4)(A).

The parties agree that no other specific offense characteristics apply.

c. <u>Chapter 3 Adjustment</u>. The parties agree that no adjustments from Chapter 3, Part A (Victim-Related Adjustments) apply. The defendant reserves the right to argue that she is a minor participant under Chapter 3, Part B (Role in the Offense Adjustments) for a **2-level** downward adjustment. The parties agree that a **2-level** upward adjustment from Chapter 3, Part C (Obstruction and Related Adjustments) applies as to Victim C.

The government calculates that the total adjusted offense level for Count 1 as to Victims A, B, D, and E is **36,** the total adjusted offense level for Victim C is **38**, and the total adjusted offense level for Victim F is **34**.

The defendant calculates the total adjusted offense level for Count 1 as to Victims A, B, D, and E is **32**, that the total adjusted offense level for Victim C is **34**, and that the total adjusted offense level for Victim F is **30**.

## Count 10: Sex Trafficking - Obstruction

d. <u>Base Offense Level</u>. The parties agree that the base offense level for obstruction of a sex trafficking investigation is **24**. U.S.S.G. §§ 2X5.1; 2J1.2(c); 2X3.1(a).

e. <u>Specific Offense Characteristics</u>. The parties agree that no specific offense characteristics apply.

f. <u>Chapter 3 Adjustment</u>. The parties agree that no adjustments from Chapter 3, Part A (Victim-Related Adjustments) apply. The

11

defendant may argue that she is a minor participant under Chapter 3, Part B (Role in the Offense Adjustments).

The total adjusted offense level for Count 10 is **24** without an adjustment for minor participant or **22** with such an adjustment.

## Grouping and Other Guidelines Considerations

g. Chapter 3 Multiple Count Adjustment.

1. The parties agree that Minor Victims A, B, C, D, E, and F in Count 1 do not group under U.S.S.G. § 3D1.2 with each other. However, Count 1 should be grouped with Count 10. U.S.S.G. §§ 3C1.1, cmt. 8; 3D1.2(c), 1B1.2(d).

2. As noted above, the parties agree that the offense level for this group of closely related counts is 38 (government's calculation) or 34 (defendant's calculation). U.S.S.G. §§ 3C1.1, cmt. 8; 3D1.2(c); 3D1.4(a) and (c).

3. The parties further assert that six units are calculated for Minor Victims A, B, C, D, E, and F in Count 1, which results in a **5-level increase.** U.S.S.G. §§ 3D1.4(a); 1B1.2(d). There is no additional increase for grouping Counts 1 and 10. U.S.S.G. §§ 3D1.2(c), 3D1.4(c).

4. The parties agree that the offense level, prior to adjustments for acceptance of responsibility and any Chapter Four or Chapter Five enhancements, is as high as **43** (government's calculation) or as low as **39** (defendant's calculation).

h. Acceptance of Responsibility. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of her intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full,

12

        complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report.

i.     <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category **I**. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within her criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on her true criminal history category, and she will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

j.     <u>Chapter Four Enhancement</u>. The United States contends that the defendant's instant offense of conviction is a covered sex crime and the defendant engaged in a pattern of activity involving prohibited conduct thus resulting in an increase of **5 levels** from the offense level determined under Chapters Two and Three. U.S.S.G. § 4B1.5(b)(1). The defendant reserves the right to oppose this enhancement.

k.     <u>Guidelines Range</u>. If the adjusted offense level is **45**, which is adjusted to **43**, and the criminal history category is **I**, the Sentencing Guidelines range is **life imprisonment**. If the adjusted offense level is **36**, and the criminal history category is **I**, the Sentencing Guidelines range is **188 to 235 months of imprisonment**.

l.     <u>Fine Range</u>. If the adjusted offense level is **43**, the Sentencing Guidelines fine range is $50,000 to $500,000. If the adjusted offense level is **36**, the Sentencing Guidelines fine range is $40,000 to $400,000. U.S.S.G. § 5E1.2(c).

m.     <u>Supervised Release</u>. The Sentencing Guidelines require a term of supervised release of at least five years up to lifetime supervision. U.S.S.G. § 5D1.2.

13

9.     **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Probation Office or the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court or the Probation Office determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

10.    **Agreements as to Sentencing Recommendation**. The parties both plan to file motions for downward departures pursuant to various parts of the United States Sentencing Guidelines. The parties further reserve the right to make motions for downward departures and/or variances from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a) and to argue for a sentence below the applicable Guidelines range. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw her guilty plea.

11.    **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to U.S.S.G. § 5E1.3. The defendant agrees to pay the $200 special assessment within 30 days after the Judgment is signed.

12.     **Restitution Agreement**.  The defendant understands and agrees that 18 U.S.C. § 1593 and the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of her crimes, including Minor Victims A, B, C, D, E, and F. Pursuant to 18 U.S.C. § 3663A(a)(3), the defendant agrees to make restitution to all victims of her crimes, including those not listed in the Indictment. There is no agreement as to the amount of restitution at this time.  The parties will work to resolve the issue of restitution 30 days prior to sentencing.

The defendant agrees that the $20,000 deposited into her Wells Fargo bank account and held in her defense counsel's IOLTA account will be turned over to the Clerk of Court to be applied as set forth in the Judgment within 30 days of sentencing (until no financial obligations remain):

(1)     First, to the Crime Victims' Fund as provided by the special assessment ($100 on each count, totaling $200).

(2)     Second, to the Domestic Trafficking Victims' Fund by the special assessment ($5,000 on each count, totaling $10,000).

(3)     Third, to any fines or fees imposed.

(4)     Fourth, to any restitution ordered by the Court.

The defendant reserves the right to argue for the return of any balance that remains after all court-ordered obligations are satisfied.

13.     **Disclosure of Assets.**  The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in

15

which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution, fines, and forfeiture ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of her guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate her ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

14. **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 1594(d), any property, real or personal, involved in, used or intended to be used to commit or to facilitate the commission of Counts One and Ten of the Indictment, and any property traceable to such property; and any property, real or personal, constituting or derived from, any proceeds obtained, directly or indirectly, as a result of Counts One and Ten of the Indictment, or any property traceable to such property.

The defendant agrees that the property subject to forfeiture includes, but is not limited to: (1) an Apple iPhone 11, serial number FK2ZJ2BHN72J; (2) an Apple MacBook Air-A2179 with charger, serial number C02D7EUDMNHP, (3) an Apple

16

iPhone 12, serial number F17DNKFE0DXP; and (4) a 2015 Mini Cooper S, VIN WMWXP7C54F2A38757. The defendant agrees to tender the Mini Cooper vehicle to the United States not less than four weeks before the date of the defendant's sentencing hearing. The defendant agrees that the property listed above was involved in, and was used to facilitate, Counts One and Ten of the Indictment, and that the vehicle was also purchased with proceeds traceable to those Counts.

The defendant also agrees to forfeit to the United States $2,000 in U.S. currency, which is in the custody of the FBI. The defendant agrees that this currency is subject to forfeiture as a substitute asset pursuant to 21 U.S.C. § 853(p) because she received proceeds from Count One in excess of that amount, and those proceeds are unavailable for forfeiture. To the extent doing so is consistent with applicable regulations, the government agrees to recommend that this currency be applied to restitution or other financial obligations in this case.

The defendant waives all defenses to the above-described forfeitures and agrees that the assets listed above may be forfeited through a civil, judicial or administrative forfeiture, or through this criminal case, at the United States' discretion. The defendant waives all defenses to the forfeiture of such assets, including any statute of limitations, and abandons her interest in those assets.

The United States reserves its right to seek direct forfeiture of additional assets and the forfeiture of substitute property pursuant to 21 U.S.C. § 853(p). The defendant acknowledges that if the Mini Cooper is damaged, missing, or otherwise

17

substantially reduced in value, the United States is entitled to substitute assets to replace the loss in value.

15. **Waivers of Appeal and Collateral Attack.** The defendant understands that 18 U.S.C. § 3742 affords her the right to appeal the sentence imposed in this case. Acknowledging this right, and in exchange for the concessions made by the government in this plea agreement, the defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to, the defendant's waiver of the right to appeal guilt or innocence, sentence and restitution, and the constitutionality of the statutes to which the defendant is pleading guilty. The defendant hereby waives all rights conferred by 18 U.S.C. § 3742 to appeal the substantive reasonableness of the defendant's sentence, if the Court imposes a sentence within or below the advisory guidelines range calculated by the Court or 235 months of imprisonment, whichever is lower. The United States similarly waives its right to appeal the substantive reasonableness of the defendant's sentence if the Court imposes a sentence within or above the advisory guidelines range calculated by the Court or 293 months of imprisonment, whichever is lower. Further, the defendant expressly waives the right to petition under 28 U.S.C. § 2255. However, the waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

The defendant has discussed these rights with her attorneys. The defendant understands the rights being waived and the defendant waives these rights knowingly, intelligently, and voluntarily.

18

16. **Sex Offender Registration.** The defendant understands that by pleading guilty, she will likely be required to register as a sex offender as a condition of her supervised release pursuant to 18 U.S.C. § 3583(d). The defendant also understands that independent of supervised release, she may be subject to federal and state sex offender registration requirements and that those requirements may apply throughout her life.

17. **No Contact.** The defendant agrees not to have contact with the victims in this case during any period of incarceration and time on supervised release absent express approval from U.S. Probation and Pretrial Services.

18. **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

19. **Complete Agreement.** This, along with any agreement signed by the parties before entry of the plea, is the entire agreement and understanding between the United States and the defendant.

ANDREW M. LUGER
United States Attorney

Date: December 19, 2022

ANGELA M. MUNOZ
EMILY A. POLACHEK
LAURA M. PROVINZINO
Assistant United States Attorneys

19

Date: December 19, 2022

*Gisela Medina*
GISELA CASTRO MEDINA
Defendant

Date: December 19, 2022

*Elizabeth Duel*
RYAN GARRY, Esq.
ELIZABETH DUEL, Esq.
Counsel for Defendant

20